WURTZ v BEECHER METROPOLITAN DISTRICT

Docket No. 301752. Submitted March 13, 2012, at Detroit. Decided
    October 2, 2012, at 9:05 a.m. Leave to appeal granted, 494 Mich
    862.

    Richard L. Wurtz brought an action under the Whistleblowers'
    Protection Act (WPA), MCL 15.361 *et seq.*, in the Genesee Circuit
    Court against Beecher Metropolitan District, Leo McClain, Jac-
    quelin Corlew, and Sheila Thorn. On February 1, 2000, plaintiff
    signed a 10-year employment contract with the district, which
    provided water and sewage services in Genesee County. Plaintiff
    alleged that defendants violated the WPA when they decided not to
    renew his contract after he engaged in activities that amounted to
    whistleblowing during 2008 and 2009. The individually named
    defendants were three of the five elected board members for the
    district during the relevant period. Defendants moved for sum-
    mary disposition under MCR 2.116(C)(10), asserting that plaintiff
    had not suffered an adverse employment action and that the
    district had no obligation to renew his contract. The court, Judith
    A. Fullerton, J., granted summary disposition in favor of defen-
    dants concluding that plaintiff had not suffered an adverse em-
    ployment action. Plaintiff appealed.

        The Court of Appeals *held*:

        1. The elements of a prima facie case under the WPA are well
    established: (1) the plaintiff was engaged in protected activity as
    defined by the act, (2) the plaintiff was discharged or discriminated
    against, and (3) a causal connection exists between the protected
    activity and the discharge or adverse employment action. Under
    the act, protected activity includes reporting to a public body a
    violation of a law, regulation, or rule. Plaintiff engaged in pro-
    tected activity under the act when he reported to the local
    prosecutor and other governmental entities that he suspected that
    defendants had violated the Open Meetings Act, MCL 15.261 *et
    seq.*, and when he met with members of the sheriff's office to
    report that he believed the individual defendants had acted
    illegally with regard to reimbursements they had claimed for
    attending an American Water Works Association conference in San
    Diego. For an employer's action to amount to an adverse employ-
    ment action, the action must be materially adverse, meaning that

it must be more than a mere inconvenience or an alteration of job responsibilities. Nonrenewal of an employment contract may constitute an adverse employment action under the WPA. To hold otherwise would be to carve an arbitrary distinction between contractual and at-will employees. Accordingly, the trial court erred by granting summary disposition in favor of defendants on that basis.

2. Summary disposition before the close of discovery is appropriate if there is no reasonable chance that further discovery will result in factual support for the nonmoving party. However, summary disposition is inappropriate when questions of motive, intention, or other conditions of the mind are material issues. Whether nonrenewal of a contract amounts to an adverse employment action in a particular instance will depend on the circumstances of the case. In this case, summary disposition was premature. Plaintiff was not given an adequate opportunity to develop a record regarding whether the nonrenewal of his contract was an adverse employment action. Plaintiff had submitted a discovery request for documents concerning whether other contractual employees had their contracts renewed. Whether other employees' contracts were renewed pro forma was relevant to whether plaintiff's contract was not renewed because of his whistleblowing activity. Further, questions of material fact remained regarding when the district decided not to renew plaintiff's contract. Summary disposition was also improper because the motivation for defendants' decision not to renew plaintiff's contract was at issue.

Reversed and remanded.

K. F. KELLY, J., dissenting, would have affirmed the decision of the trial court. The WPA requires the existence of an employment relationship; its protections do not extend to cover former employees who seek reemployment, to preemployment negotiations, or to the refusal to hire. By plaintiff's own admission, defendants scrupulously adhered to the terms of his contract. Absent a contractual obligation or legal duty to consider an extension or renewal of an employment contract, a cause of action under the WPA is unavailing when a contractual employee finishes a fixed-term contract. Because plaintiff was not an employee under the act after his contract was fulfilled, he did not suffer an adverse employment action. Because no additional amount of discovery would have assisted plaintiff in developing his case, the trial court correctly granted summary disposition in favor of defendants.

LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — ADVERSE EMPLOY-
MENT ACTIONS — NONRENEWAL OF AN EMPLOYMENT CONTRACT.

> The elements of a prima facie case under the Whistleblowers'
> Protection Act are (1) the plaintiff was engaged in protected
> activity as defined by the act, (2) the plaintiff was discharged or
> discriminated against, and (3) a causal connection exists between
> the protected activity and the discharge or adverse employment
> action; under the act, protected activity includes reporting to a
> public body a violation of a law, regulation, or rule; for an
> employer's action to amount to an adverse employment action, the
> action must be materially adverse, meaning that it must be more
> than a mere inconvenience or an alteration of job responsibilities;
> nonrenewal of an employment contract may constitute an adverse
> employment action under the act; whether nonrenewal of a
> contract amounts to an adverse employment action in a particular
> instance will depend on the circumstances of the case (MCL 15.361
> *et seq.*).

*Charles A. Grossmann* for plaintiff.

*Landry, Mazzeo & Dembinski, P.C.* (by *David B.
Landry* and *Nancy V. Dembinski*), for defendants.

Before: WHITBECK, P.J., and JANSEN and K. F. KELLY,
JJ.

JANSEN, J. Plaintiff appeals by right an order granting
summary disposition to defendants in this action under
the Whistleblowers' Protection Act (WPA).[1] We reverse
and remand for further proceedings consistent with
this opinion.

I. FACTS AND PROCEDURAL HISTORY

This case pertains to the last two years of plaintiff's
employment with Beecher Metropolitan District. The
district provides water and sewage services to approxi-
mately 4,000 residential and commercial customers

---

[1] MCL 15.361 *et seq.*

near Flint. The three individually named defendants, McClain, Corlew, and Thorn, were three of five elected board members for the district at all times relevant to this case.

On February 1, 2000, plaintiff signed an employment contract with the district. The contract provided that the district would employ plaintiff from February 1, 2000, until February 1, 2010, as the district's administrator. The parties do not dispute that plaintiff was employed for the full 10-year period under the contract, nor do the parties dispute that plaintiff received all compensation to which he was entitled under his contract. Rather, plaintiff alleges that he was discriminated against under the WPA when defendants decided to not renew his contract. Plaintiff alleges that, over the course of a two-year period, he engaged in activities that amounted to whistleblowing under the WPA, and that his contract was not renewed as a consequence of his whistleblowing activity.

### A. 2008

In May 2008, plaintiff sent a letter to the Genesee County Prosecutor, the Genesee County Sheriff, and the Mt. Morris Township police chief. The letter alleged that McClain, Corlew, and Thorn had violated the Open Meetings Act (OMA).[2] Specifically, the letter claimed that plaintiff, in his capacity as administrator, had received a billing statement from an attorney indicating that on April 2, 2008, the attorney had met privately with board members McClain, Corlew, and Thorn. Plaintiff, in his letter, inferred that, because this attorney had no existing arrangement with the district, "a majority of the [board] had met privately . . . [with the

---

[2] MCL 15.261 *et seq.*

attorney] to discuss public business." The letter noted that the board had later voted to hire the attorney. The letter also claimed that the attorney, along with McClain, Corlew, and Thorn, had "attended a . . . union negotiating session. Neither [plaintiff], nor any other staff, nor the other 2 members of the Board, knew anything in advance about this meeting, which was not scheduled as a special meeting with the appropriate 18-hour notice to the public." Plaintiff alleged that, because the April 2 meeting and the subsequent union negotiating session were private meetings involving a majority of the board, those meetings violated the OMA.

It is unclear whether the sheriff or police chief responded to the letter, but David Leyton, the Genesee County Prosecutor, did. He wrote that criminal prosecution was but one remedy for OMA violations and that he did not believe that the events described by plaintiff warranted criminal investigation. The prosecutor accordingly did not act on plaintiff's letter.

B. 2009

In January 2009, plaintiff sent a memorandum to McClain, the board president, proposing an extension and alteration of his employment contract. Plaintiff recommended that the district extend his employment to August 1, 2012, and reduce his salary and benefits, which would save the district about $33,000. At its February 11, 2009 meeting, the board told plaintiff that he could present the amended contract to the board, but at its March 11, 2009 meeting, a motion to have "[plaintiff] draw up an employment agreement with [the board's attorney]" failed; McClain, Corlew, and Thorn voted against the motion.

In May 2009, plaintiff expressed disapproval, in a memorandum sent to the board, about the possible

expense to taxpayers of the board members' upcoming trip to San Diego for the American Water Works Association (AWWA) conference. Plaintiff noted that the trip was projected to cost taxpayers $29,000, which included trips for the board members to Sea World and the San Diego Zoo. Moreover, the board members were apparently planning on driving to San Diego for the conference; plaintiff noted that "if gas mileage is given [for the board members to drive], as previously requested, that amounts to over $11,000.00, whereas members can fly from Bishop Airport ... for $280.00 round trip .... Another $4,000.00 could be saved for food and lodging for the nearly ten days requested for travelling [by car]." Plaintiff's memorandum requested that the board pass resolutions detailing the method of compensation for travel, and recommended that the board members be reimbursed only for the price of airfare even if they opted to drive to the AWWA conference.

On July 8, 2009, plaintiff asked the board to hold a special meeting to discuss the possibility of "mutually discontinu[ing]" their relationship, and an attempt at that meeting was held on July 15, 2009. Plaintiff, however, refused to meet with the board because the board had its attorney present for the meeting, and plaintiff interpreted the attorney's presence as a breach of the "gentlemen's understanding" that the meeting would be an open dialogue between the board and plaintiff only. Plaintiff indicated that he was "frustrated" with the board, but wanted to continue his employment with the district and expressed his desire to do so.

In August 2009, after the AWWA conference, plaintiff met with members of the Genesee County Sheriff's Office to discuss his belief that the board members had acted improperly or illegally regarding reimbursements

for their trip to the AWWA conference. For example, plaintiff was concerned that the board members had gone to the San Diego Zoo, Sea World, and lavish dinners with family and friends, all at taxpayer expense. Additionally, plaintiff told the sheriff's office that four of five board members actually flew to San Diego, but had reported that they drove, accordingly receiving an amount of per diem compensation and reimbursement for mileage that they were not entitled to claim.

Following defendant's meeting with the sheriff's office, a criminal investigation of the board members ensued. At least one article about the board members' reimbursements from the AWWA conference appeared in the Flint Journal. Public attendance at board meetings increased, and at those meetings members of the public began openly questioning board members about their travel expenses.

On November 11, 2009, Thorn made a motion to not extend plaintiff's employment contract beyond its expiration and to begin looking for a new administrator. The motion passed the board three votes to two. McClain, Corlew, and Thorn voted in favor of the motion.

### C. 2010

Plaintiff's last day of employment with the district was January 31, 2010. On January 19, 2010, plaintiff filed a complaint alleging that defendants had violated the WPA by not renewing his employment contract; plaintiff alleged that the board's decision to not renew his contract was retaliation for his reporting suspected violations of, *inter alia*, the OMA, the Freedom of Information Act,[3] and other Michigan statutes.

---

[3] MCL 15.231 *et seq.*

On October 18, 2010, plaintiff served defendants with a request for production of employment contracts and records. Among other things, plaintiff asked for "the written contracts . . . [of] non-union employees who were employed anytime with the District between 1990 to the present." Defendants did not produce these documents.

On November 15, 2010, defendants filed a motion for summary disposition under MCR 2.116(C)(10), in which they argued that plaintiff did not suffer an adverse employment action because "there is no evidence that Defendants discharged, threatened, or discriminated against the Plaintiff regarding his compensation, terms, conditions, location or privileges of employment." In any case, defendants argued, the board had no obligation to renew plaintiff's contract. Defendants also argued that the board's decision to not renew plaintiff's employment contract was made for the first time in March 2009, well before any of the events surrounding the AWWA conference and reimbursements. That decision, according to defendants, was merely "reiterated" in November 2009, when the board formally voted to not renew defendant's employment.

Concurrent with the time frame of this case, the criminal case against the board members, including McClain, Corlew, and Thorn, related to the AWWA conference expenses and reimbursements, continued. The trial judge dismissed the charges against McClain, and a jury returned verdicts of not guilty in favor of Corlew, Thorn, and the other board members. In its response to defendants' summary disposition motion, plaintiff argued that summary disposition was premature because at the time he served them with discovery requests, the criminal case against McClain, Corlew, and Thorn was still pending, and "the individual De-

fendants . . . exercised their 5th Amendment rights" and did not respond to discovery requests. Plaintiff asserted that "[n]ow, the Defendants, after taking the Plaintiff's deposition, but not allowing their own, [are] refusing to provide the requested information . . . ."

The trial court granted defendants' motion for summary disposition on December 6, 2010. After noting that whether nonrenewal of an employment contract amounts to an adverse employment action under Michigan law appears to be an issue of first impression, the trial court explained:

> [I]n this case the contract for the plaintiff did expire in February of '10—February 1. And despite the activities that took place earlier in the year of reporting by [plaintiff] to a public body and public officials . . . everything from the [Flint] Journal [newspaper] to the sheriff's department and the prosecutor, the Board, and I'm surprised it happened, let him stay on to February 1 of '10. And so I find there's no adverse employment action by the District and that summary disposition should be granted and I grant it.

Plaintiff now appeals by right.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition."[4]

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admis-

---

[4] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

sions, and other evidence submitted by the parties . . . in
the light most favorable to the party opposing the motion.
Where the proffered evidence fails to establish a genuine
issue regarding any material fact, the moving party is
entitled to judgment as a matter of law.[5]

"Whether a plaintiff has established a prima facie case
under the WPA is a question of law subject to review de
novo."[6]

### III. ANALYSIS

The elements of a prima facie case under the WPA
are well established: "(1) the plaintiff was engaged in
protected activity as defined by the act, (2) the plaintiff
was discharged or discriminated against, and (3) a
causal connection exists between the protected activity
and the discharge or adverse employment action."[7]

The parties do not dispute that the first element of
the prima facie case is satisfied here. In May 2008,
plaintiff reported to the local prosecutor and other
governmental entities that he suspected that defen-
dants had violated the OMA; in August 2009, plaintiff
met with members of the sheriff's office to report that
he believed defendants had acted illegally with regard
to the AWWA conference reimbursements. The WPA
defines "protected activity" as, among other things,
" 'reporting to a public body a violation of a law,
regulation, or rule . . . .' "[8] Accordingly, plaintiff's ac-
tions amount to a "protected activity" under the WPA.

---

[5] *Id.* at 120.

[6] *Manzo v Petrella*, 261 Mich App 705, 711; 683 NW2d 699 (2004).

[7] *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468
(2003).

[8] *Truel v City of Dearborn*, 291 Mich App 125, 138; 804 NW2d 744
(2010) (citation omitted).

Defendants focus their argument on the second element of the prima facie case, arguing that plaintiff was a contractual employee, and the failure to renew his contract was not, and could not be, an adverse employment action because plaintiff had no expectation of employment after the expiration of his contract, the terms of which were fulfilled.

Michigan courts have defined "adverse employment action" in the context of Michigan's Civil Rights Act (CRA)[9] and in the WPA context. Those definitions are identical. In both contexts, for an employer's action to amount to an adverse employment action, the action must be "materially adverse," meaning that it must be more than a "mere inconvenience or an alteration of job responsibilities . . . ."[10] This definition of "adverse employment action" initially arose in federal courts, in the context of federal workplace discrimination laws,[11] and was eventually adopted by Michigan courts for purposes of the CRA[12] and the WPA.

Michigan courts have also suggested that, in the CRA context, the nonrenewal of an employment contract may amount to an adverse employment action,[13] although no Michigan case addresses the issue squarely.

[9] MCL 37.2101 et seq.

[10] Meyer v City of Center Line, 242 Mich App 560, 569; 619 NW2d 182 (2000) (CRA context) (citation and quotation marks omitted); Brown v Detroit Mayor, 271 Mich App 692, 706; 723 NW2d 464 (2006), aff'd in relevant part, 478 Mich 589 (2007) (WPA context) (citations and quotation marks omitted).

[11] See, e.g., Crady v Liberty Nat'l Bank & Trust Co of Indiana, 993 F2d 132, 136 (CA 7, 1993).

[12] Wilcoxon v Minnesota Mining & Mfg Co, 235 Mich App 347, 362-366; 597 NW2d 250 (1999) (adopting Crady's definition of "adverse employment action" for CRA purposes).

[13] See, e.g., Barrett v Kirtland Community College, 245 Mich App 306, 313-324; 628 NW2d 63 (2001) (accepting without analysis that the

There are no Michigan cases interpreting the WPA that address the issue at all. "Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues. In the context of discrimination cases, federal precedent may be consulted for guidance."[14] Accordingly, because the WPA's definition of "adverse employment action" derives from the federal courts' interpretation of the same term as used in federal discrimination laws, we turn to the federal courts for guidance regarding whether nonrenewal of a contract may amount to an adverse employment action.

This issue was addressed directly by the United States Court of Appeals for the Second Circuit in *Leibowitz v Cornell University*.[15] In *Leibowitz*, the plaintiff, a 51-year-old female university professor, accepted an early retirement package after her employer did not offer her an extension of her employment contract.[16] The plaintiff sued under Title VII of the Civil Rights Act of 1964 (Title VII)[17] and the Age Discrimination in Employment Act (ADEA).[18] The trial court granted summary judgment in favor of the defendants, holding that the plaintiff had failed to establish a prima facie case of discrimination because, among other reasons, she was "unable to produce any evidence that she had or held any right to a tenured position . . . ."[19] The appellate court reversed and held that when an em-

nonrenewal of a contract was an adverse employment action but determining that the plaintiff was not entitled to relief because she could not establish causation).

[14] *Wilcoxon*, 235 Mich App at 360 n 5 (citations omitted).

[15] *Leibowitz v Cornell Univ*, 584 F3d 487 (CA 2, 2009).

[16] *Id.* at 492-496.

[17] 42 USC 2000e *et seq.*

[18] 29 USC 621 *et seq.*

[19] *Leibowitz*, 584 F3d at 497 (citation and quotation marks omitted).

ployee seeks renewal of his or her employment contract, the nonrenewal of the employment contract may be an adverse employment action for purposes of Title VII and the ADEA.[20] The court explicitly rejected the trial court's reasoning that the nonrenewal was not adverse because the defendants did not terminate the plaintiff's employment, but rather simply "chose not to renew her appointment . . . ."[21] According to the appellate court, under the trial court's reasoning "an employee could bring a discrimination lawsuit if an employer refused to hire her based on her age and/or gender, but not if the same employer failed to renew an employment contract for the same discriminatory reasons."[22] The court explained that its decision appeared to be consistent with the view of a majority of the federal circuit courts. The court explained:

> [I]n reaching this decision, we join other circuit courts that have, either implicitly or explicitly, held that non-renewal of a contract may constitute an adverse employment action for purposes of the discrimination laws. *See, e.g., Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir.2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII . . . ."); *Carter v. Univ. of Toledo*, 349 F.3d 269, 270-71 (6th Cir.2003) (reversing district court's grant of summary judgment in employer's favor on plaintiff's race discrimination claim under Title VII in connection with employer's failure to renew her contract as a visiting professor); *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279-82 (10th Cir.2003) (sufficient evidence existed for jury to reasonably conclude that employer unlawfully discriminated against employee based

---

[20] *Id.* at 501.

[21] *Id.* at 499 (citation and quotation marks omitted).

[22] *Id.* at 500.

on age under the ADEA in deciding not to renew his contract); *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir.2002) (noting, where teacher claimed non-renewal of contract was discriminatory under Title VII, that "[i]t is undisputed . . . that [plaintiff] suffered an adverse employment action"); *Kassaye v. Bryant Coll.*, 999 F.2d 603, 607 (1st Cir.1993) (noting that "act of refusing to renew appellant's employment at Bryant College" may provide grounds for discrimination claim).[23]

We find the federal courts' reasoning persuasive. Were we to hold that nonrenewal of a contract cannot, under any circumstances, qualify as an adverse employment action under the WPA because a contractual employee has no expectation of further employment past the expiration of his or her contract, we would carve an arbitrary distinction between contractual and at-will employees (who have no expectation of further employment from day to day).[24] Accordingly, we decline to hold that, as a matter of law, the failure to renew an employment contract cannot be an adverse employment action under the WPA. The trial court erred by granting summary disposition on that basis.

Whether nonrenewal amounts to an adverse employment action in a particular instance will depend on the circumstances of the particular case. Here, plaintiff was not given sufficient opportunity to develop a record regarding this question. "The purpose of discovery is to simplify and clarify the contested issues, which is necessarily accomplished by the open discovery of all relevant facts and circumstances related to the controversy."[25] "[S]ummary disposition before the close of

---

[23] *Id.* at 501 (second and third alterations in original).

[24] See *Franzel v Kerr Mfg Co*, 234 Mich App 600, 606; 600 NW2d 66 (1999) (stating that at-will employees have no reasonable expectation of continued employment).

[25] *Hamed v Wayne Co*, 271 Mich App 106, 109; 719 NW2d 612 (2006).

discovery is appropriate if there is no reasonable chance that further discovery will result in factual support for the nonmoving party."[26] On October 18, 2010, plaintiff submitted a discovery request for documents that may have yielded factual support for his position. Specifically, plaintiff requested that the district produce records regarding whether other contractual employees had their contracts renewed. These records may have provided factual support for plaintiff's position: if other similarly situated employees had their contracts renewed pro forma, plaintiff's claim that the decision to not renew his contract was adverse becomes more credible. Defendants did not respond to plaintiff's request, but instead filed their motion for summary disposition. Accordingly, plaintiff was denied the opportunity to uncover evidence that might have supported his position that the nonrenewal of his contract was an adverse employment action. Similarly, the production of these documents would be relevant to the third prong of the WPA prima facie case: causation. That is, whether other employees' contracts were renewed pro forma is relevant with regard to whether plaintiff's contract was not renewed because of his whistleblowing activity.

Defendants argue that the decision to not renew plaintiff's contract occurred on March 11, 2009, several months before he engaged in protected activity regarding the AWWA conference reimbursements. Accordingly, defendants argue, the decision to not renew his contract could not have been adverse to him because it was made before his whistleblowing activities.[27] How-

---

[26] *Colista v Thomas*, 241 Mich App 529, 537-538; 616 NW2d 249 (2000).

[27] Similarly, the timing of defendants' decision is relevant to the causation element of the WPA prima facie case: if the decision not to

ever, defendants ignore the fact that the first instance of whistleblowing activity occurred in May 2008, over a year before his contract's nonrenewal, when plaintiff reported suspected OMA violations to the local prosecutor. Moreover, plaintiff denies that the decision to not renew his contract was made on March 11, 2009; he claims that the decision to not renew his contract occurred at the November 11, 2009, board meeting. Summary disposition under MCR 2.116(C)(10) was therefore premature, as there remains a genuine issue of material fact regarding whether the board's decision occurred in March or November 2009.

Summary disposition was not only premature, but improper. "[S]ummary disposition is inappropriate where questions of motive, intention, or other conditions of the mind are material issues."[28] What motivated defendants' decision to not renew plaintiff's contract is central to this case. Moreover, summary disposition was improper because this case requires a credibility determination regarding defendants' reasons for not renewing plaintiff's contract.[29] Accordingly, because summary disposition was both prematurely and improperly granted, we reverse the trial court's grant of summary disposition and remand for discovery with regard to whether other employees had their contracts renewed, and with regard to what motivated defendants' decision to not renew plaintiff's contract in this case.

---

renew plaintiff's contract was made before his whistleblowing activity, the nonrenewal would not be because of his whistleblowing activity.

[28] *Pemberton v Dharmani*, 207 Mich App 522, 529 n 1; 525 NW2d 497 (1994).

[29] *Ykimoff v W A Foote Mem Hosp*, 285 Mich App 80, 128; 776 NW2d 114 (2009) ("It is well settled that where the truth of a material factual assertion of a moving party's affidavit depends on the affiant's credibility, there exists a genuine issue to be decided at trial by the trier of fact and a motion for summary disposition cannot be granted.") (quotation marks and citation omitted).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

WHITBECK, P.J., concurred with JANSEN, J.

K. F. KELLY, J. (*dissenting*). I respectfully dissent. Plaintiff, whose written contract of employment was completely fulfilled, never suffered an "adverse employment action" as an employee under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. The majority has not only rewritten plaintiff's contract, but it has also added language to the WPA to create a new cause of action for pre- or postemployment conduct when one simply does not exist. The WPA requires the existence of an employment relationship. By plaintiff's own admission, defendants scrupulously adhered to the terms of his contract. Plaintiff now seeks damages because defendants abided by the terms of his employment contract. Plaintiff's position is illogical and lacks any support in our jurisprudence. Absent a contractual obligation or legal duty to consider an extension or renewal of an employment contract, a cause of action under the WPA is unavailing when a contractual employee finishes a fixed-term contract. Because plaintiff did not suffer an adverse employment action and because no amount of additional discovery would have assisted plaintiff in developing his case, I would affirm the trial court.

## I. BASIC FACTS

Plaintiff was the district administrator for defendant Beecher Metropolitan District. The district has 12 employees and 5 elected board members. Plaintiff was the only nonunion employee; all other employees were covered by collective-bargaining agreements

during the relevant years. The three individual defendants, Leo McClain, Jacquelin Corlew, and Sheila Thorn, were district board members. Plaintiff readily admits that his relationship with the three individual board members was very poor, dating to well before he engaged in any whistleblowing activities. He did not "get along" with Thorn even before she was elected to the board and believed she wanted "[him] gone" as the administrator from the day she was elected. Plaintiff's relationship with McClain deteriorated in 2004 and plaintiff would not have been surprised to learn that McClain wanted him removed as the administrator. Initially, plaintiff had a good working relationship with Corlew, but that only lasted until approximately 2007 when the relationship deteriorated because of "disagreements."

Plaintiff was employed pursuant to a written contract of employment from February 1, 2000, to February 1, 2010. The contract provided that he could only be terminated for cause. He typically worked from approximately 8:00 a.m. to 12:00 noon for the district and would then go to work at his private law firm. In 2008 he earned $79,332 in addition to retirement contribution benefits, life insurance, sick and personal days, a car allowance, and health insurance. The contract did *not* contain a renewal clause. Plaintiff does not contest that he was employed for the full term of his contract and received his full salary and benefits. He further conceded in his deposition testimony that the district was under no obligation to continue his contract beyond February 1, 2010:

> *Q.* Exhibit No. 1 that I have marked, the Employment Agreement, that contract does not provide by its expressed terms for you to be employed by the township after February 1, 2010, does it?

*A.* No.

*Q.* Paragraph 8 provides that any modifications or alterations to that Agreement shall be of force and effect only when in writing and executed by both parties. Were there ever such written modifications?

*A.* Not that I recall.

*Q.* Under the expressed terms of this contract, sir, Beecher Metropolitan District did not have any obligation to employ you beyond February 1 of 2010, did they?

*A.* There's no provision in this contract for that.

In January 2009, the district's accountants informed the district that it needed to increase revenues, decrease expenses, or both.[1] On January 30, 2009, plaintiff wrote the board offering to amend his employment contract and become a "contract" employee.[2] Of particular note, in order to become a "contract" employee, plaintiff understood that he would have to cease to be employed by the district for a minimum period of 30 days from the termination of his employment to the beginning of any period of "contract" employment—in other words, become a former employee. In closing plaintiff stated:

Due to the complexity and time needed, this process would need to be commenced very shortly in order for the full benefit for Beecher to accrue. Further, there is no sense in me pursuing this without an indication that the Board is generally in favor or not in favor of the general framework described above. Therefore, please individually advise as soon as possible whether or not to pursue this. Once I know

[1] During the entire length of plaintiff's employment as the district administrator, the district continued to lose money.

[2] As described in plaintiff's proposal, a contract employee is a retiree who, after being separated for a minimum of 30 days, returns to the same position as previously held but under different terms and conditions, including no longer receiving retirement contributions.

the Board's feelings, I could have my proposal available for the February Board meeting.

* * *

Finally, I'd like to emphasize no matter what your decision is, it has been a pleasure to have worked here. I thank you! Also, it would be arrogant to imply this is a "take it or leave it" offer. While I really believe the outline is fair and produces both short term and long term benefit to [the district], I would be open to certain modifications in an effort to show good faith.

On March 11, 2009, the board declined to have plaintiff draw up a new contract with its labor attorney, thus leaving plaintiff's written contract in full force and effect.

Two months later, plaintiff began his whistleblowing reporting.[3]

## II. STANDARDS OF REVIEW

"We review de novo the decision of the trial court on the motion for summary disposition." *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). In this case, the trial court reviewed defendant's motion for summary disposition under MCR 2.116(C)(10). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618,

---

[3] The case at bar is strikingly reminiscent of *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 621; 566 NW2d 571 (1997) ("The primary motivation of an employee pursuing a whistleblower claim 'must be a desire to inform the public on matters of public concern, and not personal vindictiveness.' ").

621; 689 NW2d 506 (2004). "A genuine issue of material
fact exists when the record, drawing all reasonable
inferences in favor of the nonmoving party, leaves open
an issue upon which reasonable minds could differ."
*Nuculovic v Hill*, 287 Mich App 58, 62; 783 NW2d 124
(2010).

We also review de novo questions of statutory inter-
pretation. *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App
28, 32; 568 NW2d 332 (1997). "The primary goal of
statutory interpretation is to ascertain and give effect
to the intent of the Legislature in enacting a provision."
*Id.* Therefore, "[i]f the statutory language is clear and
unambiguous, judicial construction is neither required
nor permitted, and courts must apply the statute as
written." *Id.* This Court interprets and applies statutes
to give effect to the plain meaning of the text. *Ligons v
Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271
(2011); *McManamon v Redford Charter Twp*, 273 Mich
App 131, 135-136; 730 NW2d 757 (2006). "We cannot
read requirements into a statute that the Legislature
did not put there." *Empire Iron Mining Partnership v
Orhanen*, 455 Mich 410, 423; 565 NW2d 844 (1997).

### III. ANALYSIS

To resolve the issue presented in this case, we must
first look to the actual language of the WPA. In order for
plaintiff to have suffered an adverse employment ac-
tion, he must have first enjoyed the status of an
"employee." MCL 15.362 of the WPA provides:

> An employer shall not discharge, threaten, or otherwise
> discriminate against an *employee* regarding the *employee's*
> compensation, terms, conditions, location, or privileges of
> employment because the *employee,* or a person acting on
> behalf of the employee, reports or is about to report,
> verbally or in writing, a violation or a suspected violation of

a law or regulation or rule promulgated pursuant to law of
this state, a political subdivision of this state, or the United
States to a public body, unless the employee knows that the
report is false, or because an employee is requested by a
public body to participate in an investigation, hearing, or
inquiry held by that public body, or a court action. [Emphasis added.]

For purposes of the WPA, an "employee" is specifically defined as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied." MCL 15.361(a). By its plain language, the protections of the WPA do *not* extend to preemployment negotiations or refusal to hire. Nor does it extend to cover former employees who seek reemployment. It only applies to an *employee* regarding the *employee's* compensation, terms, conditions, location, or privileges of employment. Thus, on its face, plaintiff's cause of action fails as a matter of law because his complaints are only directed at the district's refusal or failure to negotiate a new contract with a different termination date. Refusing to rehire or renew employment past the termination date of a written employment contract is simply not within the plain language of the WPA. Plaintiff, whose contract was fulfilled and terminated by its express terms, no longer falls within the definition of "employee," which the majority seeks to expand. "[T]he proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges." *Terrien v Zwit*, 467 Mich 56, 66; 648 NW2d 602 (2002).

A prima facie case under the WPA requires a plaintiff to show that (1) he or she was engaged in a protected activity, (2) he or she suffered an adverse employment action, and (3) there was a causal con-

nection between the protected activity and the adverse employment action. *West v Gen Motors Corp*, 469 Mich 177, 183–184; 665 NW2d 468 (2003). In this case, the trial court concluded that plaintiff failed to meet the second prong of this three-part test. Contrary to the majority, I believe the trial court properly concluded that plaintiff failed to establish that he had suffered an adverse employment action. Plaintiff was no longer an employee when his contract expired; therefore, it follows that he could not have suffered an adverse employment action.

Plaintiff was employed pursuant to a 10-year written employment contract. It could only be modified by mutual agreement in writing. By the express terms of his employment contract, plaintiff's employment ceased on February 1, 2010. Any adverse employment action, therefore, must be considered in terms of the four corners of plaintiff's employment contract. It is uncontested that no action, adverse or otherwise, was taken under the terms and conditions of the contract, none.

Despite the fact that the employment contract did not contain a renewal clause, plaintiff argues that he had a continuing "employment relationship" with the district and that the WPA does not limit claims to the length of an employment contract. In so doing, plaintiff likens himself to an at-will employee. The majority agrees, stating that

> [w]ere we to hold that nonrenewal of a contract cannot, under any circumstances, qualify as an adverse employment action under the WPA because a contractual employee has no expectation of further employment past the expiration of his or her contract, we would carve an arbitrary distinction between contractual and at-will employees (who have no expectation of further employment from day to day). [*Ante* at 88.]

The distinction between an at-will employee and a contract employee is not arbitrary; they are in radically different employment relationships.

In this case, there was a written contract of employment. When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). If the language of the contract is clear and unambiguous, it must be enforced as written. *Id.* A contract is unambiguous when it fairly admits of one interpretation. *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). "A court may not rewrite clear and unambiguous language under the guise of interpretation. Rather, courts must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010) (citations and quotation marks omitted). The intent of the parties is determined from the four corners of the contract. *Rogers v Great Northern Life Ins Co*, 284 Mich 660, 667; 279 NW 906 (1938). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924).

In stark contrast to a contract of employment, employment at will is "terminable at any time and for any—or no—reason, unless that termination [is] contrary to public policy." *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 572-573; 753 NW2d 265 (2008). Unlike an at-will employer, who must take affirmative steps to alter the course of an at-will employee's status, the employment relationship for one

under a contract of employment for a specified period simply expires, requiring no action on behalf of the employer. An at-will employment arrangement, therefore, is necessarily of uncertain duration; terminating an at-will employee necessarily affects the compensation, terms, conditions, location, or privileges of employment. In contrast, the written employment contract at issue here was very specific as to the terms of employment, including its duration, which had been agreed to in writing by both parties.

If I were to accept plaintiff's analysis, I would have to accept that his employment would have continued past the expiration of his contract, regardless of the express terms of the contract. In other words, accepting plaintiff's analysis would render the termination date and modification clause of plaintiff's contract nugatory. I would also have to accept that implied in every written contract, there is an obligation or duty to the parties to renew or continue the employment if desired by the employee. This has no support whatsoever in our jurisprudence and in fact the premise is widely rejected. *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991) (stating that an implied contract is not actionable when there is an express contract covering the same subject matter.) In this case, the employment contract covered the topic of the duration of plaintiff's employment. It also required that any modifications had to be mutually agreed on in writing.[4] Even plaintiff concedes that under the contract defendants had no obligation to employ him beyond its terms, but he argues merely that the contract *should* have been extended because, in his opinion, he was an

---

[4] This illustrates the absurdity of plaintiff's position: in reality he is complaining that because of his whistleblowing, defendants scrupulously adhered to the terms of his contract.

"exemplary" employee. However, once plaintiff's contract of employment terminated on its own terms, plaintiff was no longer an employee; instead, he was merely a *candidate* for future employment. He only had a unilateral hope of being reemployed as a contract employee—nothing more than a "woulda, coulda, shoulda" claim. This is particularly true in light of the fact that he would have to have been completely separated from the district for at least 30 days before being reemployed under a new contract because of conditions imposed by the Municipal Employees' Retirement System. Plaintiff's general expectation that he could enter into a new contract in subsequent years was not supported by the express terms of his employment contract or any legal duty or obligation. There was nothing in the employment contract providing for a term of employment (or potential extension of a term of employment) greater than the term specifically set forth therein. There was no obligation for continuous employment; in fact, the contract expressly limited the term of employment. Given that plaintiff's employment contract provided for a finite term of employment, his right to employment arose from the contract and only the contract.

Both plaintiff and the majority treat the situation as a "failure to renew" when, in fact, plaintiff's employment contract did not contain a renewal clause and defendants had no duty to renew. The use of the phrase "failure to renew" is meaningless in this case; there cannot be a failure to act unless there is first an obligation, duty, or contractual requirement to act. Plaintiff's contract simply terminated on its own and a new contract was never entered into, despite the unilateral hope of plaintiff. In this case, plaintiff's employment concluded by its own terms and no adverse action was taken.

In order to support the contention that this case is about a "failure to renew" or some legal obligation to "continue" plaintiff's employment, the majority mistakenly conflates the WPA with Michigan's Civil Rights Act (CRA), MCL 37.2101 *et seq*. While our Courts may have assigned the identical definition of "adverse employment action" to both the WPA and the CRA, the two statutes combat entirely different evils and comparing the CRA to the WPA to determine whether plaintiff was an employee is misguided. The CRA explicitly covers preemployment conduct whereas the WPA does not. The CRA specifically provides:

> The opportunity *to obtain employment*, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities *without discrimination* because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, *is recognized and declared to be a civil right*. [MCL 37.2102(1) (emphasis added).]

By its very terms, the CRA allows a plaintiff to bring an action alleging discrimination on the basis of an employer's preemployment conduct. No such right exists under the WPA. Instead, the WPA is aimed at alleviating " 'the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses,' " by encouraging *employees*, who are the group best positioned to report violations of the law, to report violations by reducing their fear of retribution through prohibiting *employer* reprisals against whistleblowing employees. *Shallal*, 455 Mich at 612, quoting *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 75; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589; 734 NW2d 514 (2007). Thus, a plaintiff bringing an action under the WPA must

be an employee while no such requirement exists under the CRA.

In the context of the CRA, an "adverse employment action" includes the failure to hire or renew a contract, which occurred in *Leibowitz v Cornell University*, 584 F 3d 487 (CA 2 2009), relied on by the majority. However, I am concerned by the majority's use of federal law in this case. To the extent the majority relies on federal court decisions, this Court is not bound to follow federal caselaw interpreting a federal law, even when similar in language to our state law. *36th Dist Court v Mich AFSCME Council 25, Local 917*, 295 Mich App 502, 511; 815 NW2d 494 (2012). Our Supreme Court has cautioned:

> While federal precedent may often be useful as guidance in this Court's interpretation of laws with federal analogues, such precedent cannot be allowed to rewrite Michigan law. The persuasiveness of federal precedent can only be considered after the statutory differences between Michigan and federal law have been fully assessed, and, of course, even when this has been done and language in state statutes is compared to similar language in federal statutes, federal precedent remains only as persuasive as the quality of its analysis. [*Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 283; 696 NW2d 646 (2005).]

Moreover, even if *Leibowitz* were applicable, it is distinguishable from the case at bar. The contract in *Leibowitz* contained a renewal clause. The action was neither brought under the WPA nor a similar New York statute; rather it sought damages alleging, *inter alia*, gender and age discrimination under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 USC 621 *et seq.* In an action under Michigan's CRA, preemployment conduct is actionable, but it is not actionable

under the WPA, in which "employee" is specifically defined. Merely because "adverse employment action" is treated the same under the CRA and the WPA, it does not follow that actions specifically prohibited by the CRA are somehow merged into the WPA. If the Legislature intended to include preemployment or failure to rehire conduct as actionable under the WPA—as it has done in the CRA—it would have. "A court may not engraft on a statutory provision a term that the Legislature might have added to a statute but did not." *People v Kern*, 288 Mich App 513, 522; 794 NW2d 362 (2010). It is simply not within this Court's province to do so. As our Supreme Court stated in *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012), this type of policy argument

> is directed at the wrong branch of government. This Court only has the constitutional authority to exercise the "judicial power." Const 1963, art 6, § 1. "[O]ur judicial role 'precludes imposing different policy choices than those selected by the Legislature . . . .' " *Robertson v Daimler-Chrysler Corp*, 465 Mich 732, 759; 641 NW2d 567 (2002), quoting *People v Sobczak-Obetts*, 463 Mich 687, 694-695; 625 NW2d 764 (2001). "Whether or not a statute is productive of injustice, inconvenience, is unnecessary, or otherwise, are questions with which courts . . . have no concern." *Voorhies v Recorder's Court Judge*, 220 Mich 155, 157; 189 NW 1006 (1922) (quotation marks and citation omitted). "It is to be assumed that the legislature . . . had full knowledge of the provisions . . . and we have no right to enter the legislative field and, upon assumption of unintentional omission . . . , supply what we may think might well have been incorporated." *Reichert v Peoples State Bank*, 265 Mich 668, 672; 252 NW 484 (1934). [Alteration in original.]

Plaintiff's claim fails as a matter of law because no adverse employment action was taken during his 10 years of employment.

IV. CONCLUSION

Plaintiff's claim that defendants' failure to rehire him is not cognizable under the WPA. The majority has used creative law to support a policy-driven conclusion. Regardless of the public policy considerations, this Court is bound by the clear and unambiguous language of the WPA, which requires the existence of an employment relationship and an adverse action within the context of that employment relationship. The trial court correctly granted summary disposition in defendants' favor and I would affirm.