# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEEMIC INSURANCE COMPANY,

        Plaintiff-Counter Defendant-
        Appellee,

v

LOUISE M. FORTSON and RICHARD A.
FORTSON, individually and as conservator for
JUSTIN FORTSON,

        Defendants-Counter Plaintiffs-
        Appellants.

FOR PUBLICATION
May 29, 2018

No. 337728
Berrien Circuit Court
LC No. 2014-000260-CK

---

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

CAMERON, J. (*dissenting*).

The majority resurrects, albeit in a new form, the abolished innocent-third-party rule.[1] It also concludes that an insurance policy's fraud provision contravenes the no-fault act when applied to resident relatives. Finally, it concludes that, after cancellation, the policy's provisions will no longer apply to the policyholder who committed the fraud when the claimant is a third party. Because I disagree with all three holdings, I respectfully dissent.

Defendants, Louise Fortson and Richard Fortson, submitted false requests for attendant care benefits to plaintiff, Meemic Insurance Company, from 2009 to 2015. Defendants provided care for their son, Justin Fortson, who was injured while riding on the hood of a car. Because Justin was a "resident relative" under defendants' policy, plaintiff provided personal injury protection (PIP) benefits under MCL 500.3114(1). In 2014, plaintiff discovered that defendants were fraudulently claiming 24/7 attendant care services even when Justin was incarcerated, in drug rehabilitation programs, or staying with his girlfriend. Defendants collected over $100,000 in payments over six years.

---

[1] See *Bazzi v Sentinel Ins Co*, 315 Mich App 763; 891 NW2d 13 (2016), lv gtd 500 Mich 990 (2017).

## I. INNOCENT-THIRD-PARTY RULE

The majority first concludes that Justin, as an innocent third party, can continue to collect PIP benefits because there was no fraud in the procurement of the policy. While I agree that the fraud did not occur in the procurement of the policy, there is no basis to apply the now-abolished innocent-third-party rule to the circumstances in this case.

As the majority correctly states, the innocent-third-party rule prevented insurers from voiding a policy using fraud as a defense to paying no-fault benefits, but only if (1) there was fraud in the procurement of the policy that was easily ascertainable, and (2) involved an innocent third-party claimant. *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 771-772; 891 NW2d 13 (2016), lv gtd 500 Mich 990 (2017). Neither defendants, nor the majority, have provided support for the proposition that the innocent-third-party rule may be applied in cases that *do not* involve fraud in the procurement. Yet, the majority concludes that "because the fraud in this case was not fraud in the procurement of the policy and instead arose after the policy was issued, neither *Titan* nor *Bazzi* are dispositive." We concluded that our Supreme Court abolished the innocent-third-party rule, and there is no indication that any application of this rule was left open for future use. *Id*. at 767-768, 781-782.

Furthermore, we should not adopt the rule in a new form in order to allow a third-party claimant to collect PIP benefits when an insurer is entitled to void the policy for fraudulent conduct on the part of the policyholder. This Court clearly held in *Bazzi* that "if an insurer is entitled to rescind a no-fault insurance policy because of fraud, it is not obligated to pay any benefits under that policy, *including PIP benefits to a third party innocent of the fraud*." *Id*. at 770 (emphasis added). The majority claims there is a "meaningful distinction" between fraud in the procurement of an insurance policy and fraud arising after a claim was made under a properly procured policy. However, in both instances, the insurer is allowed to void the policy, and under *Bazzi*, "if an insurer is entitled to rescind a no-fault insurance policy because of fraud," an innocent third party cannot collect PIP benefits under that policy. *Id*. As discussed in more detail below, plaintiff is entitled to rescind, i.e., void, the no-fault insurance policy, and Justin, as an innocent third party, should not be allowed to continue to collect PIP benefits. The fact that the fraud here occurred in subsequent claims for services—and not in the procurement of the policy—is of no consequence to the outcome of this case. The only question here is whether the fraud provision at issue was valid and should be applied to the circumstances of this case.

## II. FRAUD PROVISION

### A. VALIDITY

The majority's application of the innocent-third-party rule is premised on the conclusion that the fraud provision does not void the insurance policy governing Justin's claim. To reach this conclusion, the majority determines that the fraud provision contravenes MCL 500.3114(1), and therefore, cannot apply to Justin's claim. I disagree.

According to the majority, "Because MCL 500.3114(1) mandates coverage for a resident relative domiciled with a policyholder, the fraud-exclusion provision, as applied to Justin's claim, is invalid because it conflicts with Justin's statutory right to receive benefits under MCL

-2-

500.3114(1)." This reasoning is flawed, and the majority's holding carves out an unprecedented exception to the general rule that a fraud provision in an insurance policy is valid. First, in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), this Court concluded that a fraud provision in an insurance policy applies to a policyholder's claim and can preclude all PIP benefits if the claimant submits fraudulent claims for replacement services. The majority concludes that *Bahri* is not binding in this case because the fraud provision at issue applies to a resident relative, not to the named insured under the policy, and a resident relative's entitlement to PIP benefits is governed by statute. However, there is no meaningful distinction for purposes of coverage between a policyholder and a resident relative. MCL 500.3114(1) states that "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." Whether a policyholder or a resident relative, the policy's provisions are applicable to the no-fault claim as long as they do not conflict with the no-fault act. See *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 434; 773 NW2d 29 (2009) ("Insurance policy provisions that conflict with statutes are invalid . . . ."). In this case, the policy, including the fraud provision, applies to Justin's claim as a resident relative, and that fraud provision does not contravene the no-fault act. See *Bahri*, 308 Mich App at 424-425.[2] Contrary to what the majority claims, the policy is not "duplicating statutory benefits." Instead, it is providing the terms of coverage, which are subject to the no-fault act. *Lewis v Farmers Inc Exch*, 315 Mich App 202, 209; 888 NW2d 916 (2016).

The majority relies on *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 653-654; 899 NW2d 744 (2017), for the proposition that a resident relative's claim cannot be subject to a fraud provision because the claim is governed solely by statute; however, it misconstrues the holding in that case. In *Shelton*, we concluded that the plaintiff "was not a party to, nor an insured under, the policy; she was injured while a passenger, and because neither she nor her spouse or resident relative had a no-fault policy, [the] defendant was required to pay her benefits pursuant to statute, not pursuant to a contractual agreement." *Id*. at 652. Thus, the plaintiff in *Shelton* was entitled to benefits by operation of the statute only and was not bound by any fraud provision in the other driver's policy because she was not the policyholder, a spouse, or a resident relative. *Id*. at 652-654. Therefore, the plaintiff's claim in *Shelton* was not subject to any fraud provision,

---

[2] The majority holds that the fraud provision conflicts with the no-fault act, but there is no provision in the no-fault act that prevents the use of a fraud exclusion in a policy. Instead, the majority concludes that because a resident relative is entitled to PIP benefits by operation of the statute, no policy provision can prevent the resident relative, or for that matter anyone entitled to claim benefits under another's policy, from his or her "statutory right to receive benefits under MCL 500.3114(1)." Of course, insurers are allowed to include various exclusions to manage their risk when insuring drivers so long as those exclusions do not conflict with the no-fault act. "It is a bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (quotation marks and citation omitted).

and because the no-fault act does not have its own fraud exclusion, the defendant could not avoid paying any remaining PIP benefits.

Unlike the plaintiff in *Shelton*, Justin is an insured under the policy because he is a resident relative. There is no question that the relevant insurance policy applies to his claim for PIP benefits under MCL 500.3114(1). Therefore, Justin's claim is not governed "solely by statute," and just as the fraud provision was valid in *Bahri*, the fraud provision in defendants' policy should also be deemed valid.

## B. APPLICABILITY OF THE FRAUD PROVISION

Finally, the majority concludes that the fraud provision, even if it is valid, would not apply to Justin's claim and cannot void the insurance policy. I disagree.

Insurance policies are agreements between parties, and "[t]he primary goal in the interpretation of an insurance policy is to honor the intent of the parties." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). Unless an ambiguity is present within the policy, an insurance policy must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 206-207; 476 NW2d 392 (1991). The terms of an insurance policy are interpreted in accordance with their common meanings. *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). If an ambiguity is present, it must be construed in favor of the insured. *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 214-215; 444 NW2d 803 (1989). Further, "when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). However, if a provision is not mandated by statute, the rights and limitations of the coverage are interpreted without reference to the statute. *Id.*

This case concerns the fraudulent acquisition of payments for allowable expenses. The insurance policy issued to defendants contained the following fraud provision:

### 22. CONCEALMENT OR FRAUD

This entire Policy is void if any **insured person**[3] has intentionally concealed or misrepresented any material fact or circumstance relating to:

A. This insurance;

---

[3] The policy defines an "insured person" in part as "You, if an individual." The policy further defines "you" as "any person or organization listed as a Named Insured on the Declarations Page" as an assigned driver or another named insured. Louise and Richard were the named insureds on the declarations page.

B.  The Application for it;

C.  Or any claim made under it.

To prove fraud and void a policy, the insurer must demonstrate that

> (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Bahri*, 308 Mich App at 424-425.]

In *Bahri*, we concluded that clear evidence of fraud would operate to void a policy under that policy's fraud provision. *Id*. at 425.

I agree with the majority that the evidence clearly demonstrates that defendants defrauded plaintiff. However, according to the plain terms of the policy, plaintiff was entitled to void the policy if an insured person made a material misrepresentation in a claim made under the policy. See *Upjohn Co*, 438 Mich at 207 (stating that an insurance policy must be enforced in accordance with its terms). Louise was a named insured on the policy, and her fraudulent requests for attendant care benefits constituted a material misrepresentation in a claim made under the policy. Moreover, defendants have not provided statutory authority that would specifically prohibit plaintiff from exercising its rights under this clause of the policy. See *Titan*, 491 Mich App at 554. There was no genuine issue of material fact precluding the trial court from granting summary disposition to plaintiff.

Finally, the majority concludes that defendants were only attendant care providers for Justin and were no longer the named insureds due to plaintiff's cancellation of the insurance policy in 2010. The majority maintains that "there is no basis to extend [defendants'] status as insured persons under the policy beyond the date it was cancelled." I disagree.

Plaintiff provided Justin coverage by virtue of his status as a "resident relative" of the named insureds, i.e., defendants. Justin's claim is subject to the terms of the policy even if it was subsequently cancelled, and defendants remain the named insureds under the policy. The policy at issue is an "occurrence" policy, which provides coverage "no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations of actions provisions, providing the act complained of occurred during the policy period." *Stine v Continental Cas Co*, 419 Mich 89, 98; 349 NW2d 127 (1984). One contractual provision under the policy provides a consequence for fraudulent conduct. That provision clearly states that the "entire policy is void if any **insured person** has intentionally concealed or misrepresented any material fact or circumstance relating to . . . any claim made under it." An "insured person" includes the "Named Insured on the Declarations Page." Defendants have been at all times named insureds under the policy on which Justin's claim is based. This makes sense because Justin's claim is governed by the named insureds' policy. The fact that plaintiff cancelled the policy *after* Justin's claim was filed does not affect the terms of the policy as it was written. Defendants are still named insureds on the declarations page of that policy, and it would be illogical to treat the policy, for purposes of Justin's claim, as not having any named insured simply because plaintiff

cancelled the policy after Justin filed his claim. Moreover, the fraud provision at issue states that *any* insured person—rather than *the* insured person—who commits fraud will void the entire policy. For purposes of Justin's claim, defendants were still considered insureds for servicing any and all future claims based on the occurrence at issue—Justin's injuries from the accident.

As a final point, the majority relies on the language of the cancellation clause, which states, "Cancellation will not affect any claim that originated prior to the date of cancellation." The claims for attendant care benefits—even if sought after the cancellation of the contract—still originate from the initial claim for no-fault benefits. Defendants cannot avoid the consequences of committing fraud simply because the policy is no longer in effect. Any such outcome contravenes the purpose of an occurrence-based policy.

### III. CONCLUSION

I would conclude that the trial court did not err in granting summary disposition to plaintiff because there is no genuine issue of material fact and plaintiff is entitled to relief. Defendants submitted fraudulent claims in contravention to the policy's fraud provision, and the innocent-third-party rule should not allow Justin to continue collecting PIP benefits.


/s/ Thomas C. Cameron