*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE GABLE,

        Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

        Defendant-Appellee.

UNPUBLISHED
April 2, 2019

No. 341757
Macomb Circuit Court
LC No. 2016-001087-NF

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

In this dispute about entitlement to first-party personal injury protection (PIP) benefits, plaintiff Denise Gable appeals as of right the trial court's order granting the motion for summary disposition filed by defendant Citizens Insurance Company of the Midwest ("Citizens"). The trial court granted the motion pursuant to MCR 2.116(C)(10) (no genuine issue of material fact, movant entitled to judgment as a matter of law), finding no genuine issue of material fact that the fraud exclusion provision in plaintiff's insurance policy barred her complaint for first-person personal injury protection (PIP) benefits. For the reasons stated below, we reverse the trial court's summary disposition order and remand the matter to the court for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On February 13, 2014, plaintiff was stopped for traffic behind another vehicle when her car was rear-ended by a pickup truck with sufficient force to push her into the car in front of her. Plaintiff went to the emergency room at Henry Ford Macomb Hospital complaining of a left temporal headache due to hitting her head on the steering wheel, pain in her anterior chest wall from the seatbelt, pain in her entire spine, pain in her knees from striking the dashboard, and pain in her right shoulder. She received pain medication and was discharged. In subsequent days, plaintiff addressed the pain in her back and her right shoulder and arm with her chiropractor, her primary care physician, and, finally, with an orthopedic surgeon, James Kehoe, IV, D.O. Dr. Kehoe reported that plaintiff had "fairly significant pain with difficulty raising her arm over her

head and weakness with external rotation," surmised that she appeared to have a shoulder strain, and put her in physical therapy.

On May 14, 2014, a physical therapist was manipulating plaintiff's neck and shoulder area when plaintiff started having trouble breathing and became lightheaded. As plaintiff was driving home, she "got like a gray flash[,]" felt "woozy" again, and experienced blurred vision out of her left eye. When matters did not improve, she went to Mt. Clemens Regional Medical Center, where she complained of a sharp headache unlike any she had ever had, an increase in pressure behind her left eye, and difficulty in focusing with her left eye. The following day, plaintiff visited ophthalmologist, Dr. Robert J. Franchi, D.O., who reported in a May 22, 2014 letter to plaintiff's primary care physician (PCP) that plaintiff suffered acute unilateral vision loss in her left eye, with photophobia, i.e., light sensitivity, and that he suspected ischemic optic neuropathy (ION).

Thereafter, plaintiff was referred to several specialists to determine the cause and treatment of her condition. In July 2014, plaintiff saw neurologist Julie A. Burnham, D.O., who reported to Dr. Franchi and plaintiff's PCP her opinion that plaintiff had experienced ION to the front (anterior) of the optic nerve (AION). The following month, plaintiff returned to Dr. Burnham reporting pain on the left side of her face that increased with exposure to bright light. Dr. Burnham surmised that plaintiff was suffering with "left neuritic facial pain associated with the left AION." Dr. Burnham prescribed something for plaintiff's facial pain and recommended a follow-up visit in two months, or sooner if necessary. When this medication produced intolerable side effects, plaintiff and Dr. Burnham talked about other treatment options, including the possibility of gamma knife stereotactic radiosurgery (GK SRS).

In late 2014, plaintiff began treating with neuro-ophthalmologist Daniel J. Lin, M.D. Dr. Lin who wrote in a December 2014 letter to Hanover P.P. Unit Insurance, the insurer of the vehicle that had rear-ended plaintiff's car, that plaintiff may have experienced ION resulting from manipulation during treatment for injuries she suffered in her car accident. Several weeks later, on January 21, 2015, Dr. Lin reported to Hanover that plaintiff continued to have problems with her left eye and facial pain, complained of sensitivity to light, and that optic atrophy provided evidence of visual loss. He surmised that "[i]f this is traumatic optic neuropathy [TON]," plaintiff's visual loss will likely remain.

In March 2015, Dr. Lin wrote to plaintiff's attorney stating that plaintiff's vision problem "started after her accident and seems reasonably associated with the trauma from her accident." In May 2015, plaintiff was referred to Michigan Head & Spine Institute (MHSI), where she saw Omar Qahwash, D.O., to discuss treatment of her face pain. Dr. Qahwash ordered a number of tests, none of which produced remarkable results, and discussed various treatment options for plaintiff's face pain, but without recommending any of them at the time.

On December 16, 2015, Dr. Lin wrote a letter to Hanover in which he stated that plaintiff's "visual loss in the left eye is likely due to a mild traumatic optic neuropathy on the left." Thus, the record indicates that by the end of 2015, plaintiff was still experiencing vision problems in her left eye and associated pain on the left side of her face. With the exception of one medication that produced intolerable side effects, none of the medications prescribed by her doctors provided plaintiff with relief.

On April 1, 2016, plaintiff filed a complaint seeking no-fault PIP benefits arising out of the February 13, 2014 accident. In its answer to plaintiff's complaint, defendant denied that plaintiff was entitled to PIP benefits, asserting that her condition did not arise out of the ownership, maintenance, or use of a motor vehicle as a motor vehicle and that her actions during the pendency of her claims breached her obligations under the policy.

In August 2016, Dr. Lin referred plaintiff to the Kresge Eye Institute, where Dr. Robert Tomsak reported that plaintiff was suffering from "functional visual loss," but indicated that there were no signs of traumatic optic atrophy, and opined that plaintiff's condition might be stress induced. Around the same time, plaintiff underwent the first of three insurance medical examinations (IME). These examinations stretched into January 2017. Her examiners were a neuro-ophthalmologist and two orthopedic surgeons. None of them concluded that plaintiff needed more chiropractic treatment, that she was disabled or incapable of returning to her previous level of work, or that she needed attendant or household services. The ophthalmologist surmised that plaintiff was not being truthful about the vision capabilities of her left eye, and that whatever eye issues she had likely resulted from autoimmune issues, not from her traffic accident. One of the orthopedic surgeons found the treatments and diagnostic studies performed for plaintiff reasonable, "based upon her symptomatic complaints," but did not think she needed additional treatment or diagnostic workups, and surmised that chiropractic treatments were the source of plaintiff's ongoing problems rather than anything directly related to the traffic accident.

In March 2017, Dr. Jeffry Jacobs, a neurologist at MHSI, referred plaintiff to Inga A. Grills, M.D., a radiation oncologist, for information regarding GK SRS. According to the doctor's notes, plaintiff reported that Dr. Qahwash had recommended GK SRS a few years earlier, but the "Gamma Knife 'freaked her out' and she did not follow up any further." Dr. Grills noted that plaintiff's left-side face pain could represent atypical trigeminal neuralgia, started plaintiff on a trial of carbamazepine, and opined that, in light of the severity of plaintiff's symptoms, GK SRS could be considered, although it might be potentially less effective in the setting of atypical trigeminal neuralgia. After discussing the logistics and potential side effects of GK SRS, plaintiff and Dr. Grills agreed that if the new medication did not produce significant relief in a month, they would proceed with surgery. Plaintiff did in fact undergo GK SRS on May 2, 2017.

Plaintiff resumed physical therapy sometime in 2017. On August 9, 2017, plaintiff revisited Dr. Kehoe for a checkup of her right shoulder. Dr. Kehoe observed positive impingement signs, ordered an "MR evaluation" of plaintiff's right shoulder, and recommended that any surgery be entered into "with trepidation given her history and not really knowing what neurologically is going on with her." At an August 16, 2017 follow-up visit to discuss the results of the MRI, Dr. Kehoe noted significant changes from plaintiff's previous MRI and discussed arthroscopic evaluation of her shoulder and surgical responses to specific findings. Plaintiff elected to go ahead with surgery.[1]

_____

[1] Plaintiff underwent surgery to repair her rotator cuff on September 26, 2017.

Also in August 2017, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). The gravamen of defendant's argument was that plaintiff had misrepresented her condition to defendant and to her doctors. Defendant asserted that no medical professionals had provided a medical explanation for plaintiff's ongoing complaints, and none could relate the treatments she had received to the February 13, 2014 car accident. Defendant further asserted that plaintiff had Sjogren's syndrome, a condition that produces symptoms identical to those suffered by plaintiff and which she had failed to reveal to several of her doctors. Finally, defendant asserted that surveillance video from July 2, 2017, showing plaintiff waxing her car in the bright sunshine, without wearing sunglasses, belied plaintiff's claims of "extreme sensitivity to light and significant right arm/should pain," and further illustrated her material misrepresentations to defendant. Because there was no genuine issue of material fact that plaintiff committed fraud, defendant argued, the trial court should dismiss plaintiff's claim as a matter of law.[2]

In response, plaintiff denied that her symptoms were related to Sjogren's syndrome and that she had misrepresented her condition to her healthcare providers or to defendant. She denied that the video illustrated that she had misrepresented her condition, arguing that she was under no restrictions that prevented her from waxing her car, and that she had not presented any claims to defendant for replacement services with respect to waxing her car. She also noted that three of her physicians had opined that her traffic accident had proximately caused her anxiety and depression, left lobe neuropathy, and visual difficulties.

Subsequent to the September 5, 2017 hearing on defendant's pending motion, the trial court issued a detailed written opinion in which it pointed to Dr. Burnham's diagnosis of AION and found equivocal Dr. Lin's testimony about subsequent potential diagnosis of TON, and ruled as follows:

Viewing the evidence in the light most favorable to [plaintiff], reasonable minds could conclude only that Gable consistently misrepresented her eye diagnosis as traumatic in nature, stemming from the motor vehicle accident at issue. Here, [defendant] presented documentary evidence that [plaintiff's] treating physicians did not conclude that she suffered a traumatic optic neuropathy because objective testing could not confirm that diagnosis. Further, the evidence presented demonstrates that Dr. Qahwash rejected gamma-knife treatment instead of recommending it to [plaintiff], as she represented. And the surveillance report belies plaintiff's assertion that she was unable to work in sunlight. In short, [plaintiff] failed to present documentary evidence creating a dispute as to these material facts demonstrating that she made knowing or reckless false statements in order to procure medical treatment at [defendant's] expense."

---

[2] Defendant argued alternatively for partial summary disposition on the ground that there was no genuine issue of material fact as to whether plaintiff's optical treatments are genuine and related to the motor vehicle accident. The trial court did not address this argument.

With regard to defendant's claim that plaintiff committed fraud by not revealing a pre-existing diagnosis of Sjogren's syndrome, the trial court ruled, "there are genuine issues of material fact as to whether plaintiff actually had Sjogren's syndrome, and reasonable minds could differ as to whether plaintiff's failure to disclose the condition was a misrepresentation." After the trial court denied plaintiff's motion for reconsideration, this appeal followed.

## II. ANALYSIS

Plaintiff contends that the trial court erred by impermissibly assessing the credibility of the evidence in making its summary disposition decision. We agree.

This Court reviews de novo motions for summary disposition under MCR 2.116(C)(10). *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). The Court views the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party, and draws all reasonable inferences in favor of the nonmovant. *Id*. Summary disposition is properly granted where, [e]xcept to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When deciding a motion for summary disposition, a court may not make findings of fact or weigh credibility. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994); *Amerisure Ins Co v Plumb*, 282 Mich App 417, 431; 766 NW2d 878 (2009).

When an insurance company relies on a policy's exclusionary clause as an affirmative defense against the policyholder's lawsuit, the insurance company has the burden to prove that the exclusion applies. *Shelton*, 318 Mich App at 657; *Auto Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). The provision in plaintiff's policy upon which defendant relies states:

> We do not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

In order to prove the applicability of this fraud exclusion applies, defendant must show:

> that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Mina v. Gen. Star Indemnity Co.*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997).]

A statement is material if it is reasonably relevant to the insurer's investigation of a claim. *Id*. "[F]raud . . . is not to be lightly presumed, but must be clearly proved by clear, satisfactory and convincing evidence[.]" *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (quotation marks and citations omitted). "Generally, whether an insured has

committed fraud is a question of fact for a jury to determine." *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; __ NW2d __ (2018). "However, under some circumstances, a trial court may decide as a matter of law that an individual committed fraud." *Id*., citing *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425-426; 864 NW2d 609 (2014). Nevertheless, summary disposition is inappropriate when questions of motive, intention, credibility, or other conditions of mind are material issues. *Wurtz v Beecher Metro-Dist*, 298 Mich App 75, 90; 825 NW2d 651 (2012), rev'd on other grounds 495 Mich 242 (2014); *Pemberton v Dharmani*, 207 Mich App 522, 529 n 1; 525 NW2d 497 (1994).

On appeal, defendant largely abandons the argument it set forth in the trial court that plaintiff's failure to inform some of her healthcare providers of an alleged pre-existing condition of Sjogren's syndrome constituted fraudulent representations. Instead, defendant adopts the trial court's implicit reasoning that plaintiff misrepresented her condition to defendant when she claimed that her vision problems resulted from traumatic optic neuropathy arising from her car accident, and continues to maintain that surveillance video belies plaintiff's claim of an accident-related shoulder injury. Defendant contends that the present case is similar to *Bahri*, 308 Mich App 420 (2014), and calls for the same outcome, i.e., affirmation of the trial court's grant of summary disposition based on fraud.

*Bahri* involved a plaintiff seeking PIP benefits from a defendant insurer who declined to pay for the plaintiff's replacement services. *Bahri*, 308 Mich App at 422. Because the plaintiff had requested replacement services for a period *before* the traffic accident occurred, as well as for tasks video surveillance showed the plaintiff performing, the insurer moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that the fraud exclusion in the plaintiff's policy barred her claim. *Id*. The trial court granted the defendant's motion for summary disposition, and the plaintiff appealed in this Court. This Court affirmed the trial court's decision. In the process, the Court observed that the plaintiff's claim for replacement services rendered before the accident, and for dates on which surveillance showed her performing tasks for which she made replacement claims, "belie[d] plaintiff's assertion that she required replacement services, and it directly and specifically contradict[ed] representations made in the replacement services statements." *Id*. at 426. Thus, "[r]easonable minds could not differ in light of this clear evidence that plaintiff made fraudulent representations for purposes of recovering PIP benefits." *Id*. Defendant argues that, as in *Bahri*, the plaintiff in the present case "made fraudulent representations in the furtherance of her claim[,]" and, therefore, that the fraud exclusion provision in defendant's insurance policy bars her claim.

Notwithstanding defendant's assertion, we find the case at bar distinguishable from *Bahri*. No medical or legal judgment was required of the plaintiff in *Bahri* to recognize that submitting statements to her insurer for replacement services before her traffic accident was untruthful. The same holds true for the *Bahri* plaintiff's request for payment for replacement services for tasks that she actually and repeatedly performed. This Court concluded, "such repeated activities are sufficient to establish the elements of fraud beyond a question of fact." *Shelton*, 318 Mich App at 660; see also *Bahri*, 308 Mich App at 426. The evidence of fraud offered in the case at bar, however, is not as "clear, satisfactory and convincing" as that seen in *Bahri*. *Cooper*, 481 Mich at 414.

-6-

Although defendant and the trial court pointed to medical records of various doctors who surmised that plaintiff's vision problems resulted from ischemic optic neuropathy, the record also contains potential diagnoses of traumatic optic neuropathy. As previously indicated, Dr. Lin stated in a December 2015 letter to Hanover Insurance that "plaintiff's "visual loss in the left eye is likely due to a mild traumatic optic neuropathy on the left[.]" The trial court found Dr. Lin's deposition testimony "equivocal," but by so doing, the court arguably made an improper finding of fact or credibility assessment. See *Skinner*, 445 Mich at 161. Dr. Tomsak suspected ischemic optic neuropathy, but the record evidence shows that he also listed "traumatic optic neuropathy" as a second assessment. In addition, the record shows differing opinions about the origin of whatever condition caused plaintiff's vision issues. Dr. Franchi suspected ischemic optic neuropathy, but opined that plaintiff's car accident proximately caused the condition, Matthew Prior, D.O., whom plaintiff visited in August 2016, and Dr. Tomsak suggested that her symptoms were stress-related, and Dr. Lin stated at different times that her vision problems resulted from manipulation at physical therapy, from ION, or from TON. As late as August 2017, Dr. Kehoe indicated the absence of a definitive diagnosis of plaintiff's neurological issues.

In light of the foregoing, to conclude that plaintiff made material representations knowingly or recklessly with the intent that defendant rely on them requires either ignoring some of the record evidence, finding some evidence more credible than other evidence, or viewing the evidence in the light most favorable to the movant, rather than the nonmovant. All of which is prohibited when deciding a motion for summary disposition. See *Shelton*, 318 Mich App at 657; *Amerisure Ins Co*, 282 Mich App at 431. In addition, to the extent that the trial court impliedly determined that plaintiff could not believe in good faith that she was entitled to PIP benefits, given the opinions of various doctors that her condition was attributable to ION rather than TON, this was a determination inappropriate for summary disposition. See *Wurtz*, 298 Mich App at 90; *Pemberton*, 207 Mich App at 529 n 1.

Defendant points to several specific examples of alleged misrepresentation from plaintiff's deposition. Defendant contends that plaintiff misrepresented her condition when, at her second deposition, she "testified that she was diagnosed with "TON – traumatic optic neuropathy." Upon review of the deposition transcript, we note that plaintiff does testify that her doctors diagnosed her with TON, but she also said that doctors provided an alternative diagnosis, and agreed that it could be ION. Asked whether "any doctor [told her] that it wasn't due to trauma or that it was not likely that it was due to trauma[,]" plaintiff replied, "No, both of them [referring to Drs. Franchi and Lin] said it was from the car accident." As indicated above, there is record evidence to support plaintiff's testimony, specifically with regard to Dr. Lin.

Defendant also contends that the video surveillance of plaintiff establishes that she misrepresented her condition to defendant with claims of "extreme sensitivity to light and significant right arm/shoulder pain." The premise of defendant's assertion is that plaintiff has said that she is, in the words of defendant, "unable to work in sunlight." Plaintiff denies making this statement, and at her 2017 deposition, she provided testimony regarding her sensitivity to light that was more nuanced than defendant's premise would suggest. Plaintiff said that she was looking for a job "that doesn't have light" or that did not "involve computers of bright lights." However, she also indicated that some types of computer screens emit a light that is more bothersome to her eye than do others, and her testimony suggested that she could tolerate direct sunlight without pain for short periods. Moreover, nothing in the record indicates that she is

under doctor's orders to always wear sunglasses when outside. Five minutes of video surveillance showing plaintiff in the sunlight with her sunglasses on top of her head, at hand should she need them, is not necessarily inconsistent with her deposition testimony, nor does it provide "clear, satisfactory, and convincing evidence" of fraud. *Cooper*, 481 Mich at 414. Similarly, we do not believe that the five-minute clip from the surveillance video presents "clear, satisfactory, and convincing evidence" of fraud with regard to plaintiff's claims of shoulder and arm pain resulting from the car accident. Just because plaintiff could wax a single spot on the door of her vehicle for five-minutes, alternating hands every few seconds, does not show that she could perform tasks requiring her to lift and carry, nor does it conclusively prove intent to defraud. See *Shelton*, 318 Mich App at 660 (indicating that a plaintiff's modest engagement in activities that the plaintiff asserts is painful is not "sufficient to establish any of the elements of fraud beyond a question of fact").

Viewing the record in the light most favorable to plaintiff, the nonmovant, this Court concludes that defendant failed to establish that plaintiff made material representations that were false, knowingly or recklessly, and intending for defendant to rely on them. It may turn out that plaintiff is not entitled to PIP benefits for some other reason. However, fraud "is not to be lightly presumed," and defendant did not provide "clear, satisfactory, and convincing evidence" that plaintiff violated the fraud provision in her policy. See *Cooper*, 481 Mich at 414.

We reverse the trial court's order granting summary disposition to defendant and remand the matter to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly

-8-