*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT TATE,

        Plaintiff-Appellee,

and

PRIME REHABILITATION SERVICES LLC,

        Intervening Plaintiff,

v

SADE JACKSON,

        Defendant,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellant.

UNPUBLISHED
July 2, 2019

No. 343587
Wayne Circuit Court
LC No. 16-011739-NI

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Robert Tate was involved in a two-vehicle accident that was not his fault. Because he was uninsured and lived with his mother, plaintiff sought benefits under the insurance policy that she purchased from defendant Farm Bureau General Insurance Company of Michigan. Defendant denied plaintiff's claim for benefits, alleging that he engaged in fraud. In the resulting lawsuit, defendant moved for summary disposition, primarily arguing that plaintiff's claims for benefits were barred by the no-fault policy's anti-fraud clause. The trial court denied defendant's motion, ruling that the policy's anti-fraud clause did not bar plaintiff's claim for benefits. Defendant appealed.

If plaintiff did not engage in fraud, then this Court's decision in *Meemic Ins Co v Fortson*, 324 Mich App 467; 922 NW2d 154 (2018), lv gtd 926 NW2d 805 (2019), controls and

-1-

the insurance contract's anti-fraud clause cannot bar plaintiff's claim for personal-injury-protection benefits. Concluding that there are questions of fact on defendant's claims of fraud (with one exception, in which there clearly was no fraud), and further concluding that defendant's remaining arguments for summary disposition fail, we affirm.

## I. BACKGROUND

Neither intervening plaintiff, Prime Rehabilitation Services LLC, nor defendant Sade Jackson is involved in this appeal. Therefore, we refer to Robert Tate as plaintiff and Farm Bureau as defendant throughout this opinion. On March 13, 2016, plaintiff was involved in a two-vehicle accident. Another driver, Sade Jackson, exited a parking lot and failed to yield to oncoming traffic, colliding with plaintiff's rental car. The accident caused heavy damage to both vehicles and plaintiff was knocked unconscious.

Three months after the accident, plaintiff completed an application for benefits from defendant under the insurance policy purchased by his mother, with whom he lived. On the application form, plaintiff described his injuries and disclosed both his treating-medical providers and his medical-insurance-policy information. The application form contained several questions regarding the claimant's employment. On the form, plaintiff did not claim that he was employed when the accident occurred, nor did he claim that he lost any time from work. Where asked to list his "present employer," plaintiff wrote the name of his former employer, but then drew a line through it. Plaintiff did not include any other information about employment, such as his occupation, date hired, average weekly wage, or contact information for the employer. The application form did not ask plaintiff to disclose whether he was unemployed, whether he had been offered another job that he had to decline because of his accident-related injuries, or whether he used any legal or illegal drugs.

At his subsequent deposition, plaintiff confirmed that he had been terminated from his former employer and that he was unemployed on the date of the accident. He also testified that, approximately three weeks before the accident, a company called Expedited LLC offered him employment as a commercial truck driver. Records supplied by the company verified that it had offered plaintiff a position as a commercial truck driver and detailed the expected compensation for that employment. Plaintiff had not begun working for the company on the date of the accident, and he rescinded his acceptance of the employment offer after the accident. He later accepted employment as a commercial truck driver with a company called RJH Transportation. Plaintiff testified that he worked there for several months but that he was unable to continue working because he was "in a ridiculous amount of pain" from his accident-related injuries.

While treating with various medical providers, plaintiff began using the services of a company called There and Back Transportation, which transported injured persons to their medical appointments. There and Back created a log that detailed the dates on which it purportedly provided plaintiff transportation and plaintiff signed many, but not all, of the entries on that log. There and Back then created invoices that it sent to defendant with a request for compensation for its services. Plaintiff maintains that There and Back did not send copies of the invoices to him for approval.

In the trial court, defendant raised numerous detailed factual issues, arguing that the invoices submitted by There and Back fraudulently inflated the number of miles traveled and claimed compensation for trips that never occurred. Defendant also conducted surveillance of plaintiff's home on two different days. Defendant maintains that plaintiff did not leave his home during a certain time period on those two days and asserts that this contradicts There and Back's representation that it provided plaintiff transportation to medical appointments on those days.

Based on the alleged fraud, defendant cut off plaintiff's medical benefits under the insurance contract, arguing that the fraudulent acts voided plaintiff's insurance coverage. In doing so, defendant relied on an anti-fraud clause in the insurance contract, which states:

**C.     Fraud or Concealment**

The entire policy will be void if, whether before or after a loss, you, any family member, or any insured under this policy has:

1.       intentionally concealed or misrepresented any material fact or circumstance;

2.       engaged in fraudulent conduct; or

3.       made false statements;

relating to this insurance or to a loss to which this insurance applies.

When defendant cut off his medical benefits, plaintiff filed suit against both Jackson and defendant. Plaintiff obtained a default judgment against Jackson. As noted earlier, Jackson did not appeal from that judgment and is not a party to this appeal.

As against defendant, plaintiff's lawsuit sought payment of personal-injury-protection (PIP) benefits, as well as uninsured-motorist (UM) and underinsured-motorist (UIM) coverage. In defense of the lawsuit, defendant has argued that a single instance of fraud, whether committed by plaintiff or his service provider, requires dismissal of all of plaintiff's claims in their entirety, including plaintiff's claims for PIP, UM, and UIM benefits.

As to plaintiff, defendant argued that he committed fraud in several ways: (1) by listing his former employer as his present employer on the wage-loss benefits application; (2) by failing to disclose that he was unemployed on the application; (3) by failing to disclose employment that had been offered to him but that he had not yet started; and (4) by failing to disclose his marijuana use. Defendant also argued that plaintiff committed fraud when There and Back submitted reimbursement claims for dates when it purportedly did not transport plaintiff, dates when plaintiff purportedly did not have doctor's appointments, and locations that purportedly did not exist.

Defendant moved for summary disposition of plaintiff's claims, arguing that plaintiff's PIP, UM, and UIM claims were barred by the anti-fraud provision of his mother's no-fault policy, and his UM and UIM claims were separately barred because he failed to comply with the proof requirements contained in the policy. The trial court denied defendant's motion, ruling

-3-

that plaintiff was not a party to the policy and, in any event, he did not submit the allegedly fraudulent transportation bill. The trial court neither addressed nor decided defendant's various arguments regarding the fraud that allegedly occurred in the areas of employment and transportation services. Furthermore, the trial court did not address defendant's argument regarding plaintiff's alleged failure to comply with the proof requirements applicable to his UM and UIM claims.

Defendant appeals from the trial court's decision by leave granted. *Tate v Jackson*, unpublished order of the Court of Appeals, entered June 26, 2018 (Docket No. 343587). This Court stayed further proceedings in the trial court, pending resolution of this appeal or further order of this Court. *Id*.

## II. ANALYSIS

## A. STANDARD OF REVIEW

Although defendant moved for summary disposition under MCR 2.116(C)(8) and (10), because resolution of the motion required consideration of evidence outside the pleadings, this Court will treat the motion as having been decided under MCR 2.116(C)(10). *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776; 910 NW2d 666 (2017).

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Candler*, 321 Mich App at 777. A motion brought under MCR 2.116(C)(10) is properly granted when there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. *Dextrom*, 287 Mich App at 415. Moreover, this Court reviews de novo questions involving the proper interpretation of a contract or the legal effect of a contractual clause. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## B. *MEEMIC* AND RESIDENT RELATIVES COVERED UNDER A NO-FAULT POLICY

Defendant first argues that the anti-fraud clause of its no-fault policy barred plaintiff's claims for PIP, UM, and UIM benefits. There are two components to this argument. First, defendant argues that the trial court misapplied the law and incorrectly held that the anti-fraud exclusion in the policy did not apply to plaintiff because he did not purchase the policy and was not in privity of contract with defendant. Second, defendant argues that there is no genuine question of material fact that plaintiff committed fraud, and the trial court erroneously failed to grant defendant's motion for summary disposition and dismiss plaintiff's lawsuit in its entirety. We take up each component in turn.

An "insurance company has the burden to prove that one of the policy's exclusions applies." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). "Reliance on an exclusionary clause in an insurance policy is an affirmative defense; therefore,

defendant has the burden of proof." *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). "Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense." *Id*.

In *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), this Court explained the elements of the affirmative defense of fraud in the specific context of PIP benefits:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id.* at 424-425, quoting *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997).]

When an insurer attempts to defeat a plaintiff's claim for coverage based on an anti-fraud clause, the insurer must prove that the insured "actually intended to defraud the insurer." *West v Farm Bureau Mut Ins Co of Mich*, 402 Mich 67, 69; 259 NW2d 556 (1977).

In the trial court, plaintiff argued that this Court's opinion in *Shelton* controlled the result in this case, while defendant argued that this Court's opinion in *Bahri* controlled. The trial court directly addressed this issue, relied solely on *Shelton*, and held that the anti-fraud clause did not apply because plaintiff "wasn't a party to the contract" and "was not in privity of a contract with Farm Bureau." The trial court erred in relying upon *Shelton*, however, because the plaintiff in that case did not have a no-fault policy, nor did her spouse, and she was not a resident relative under such a policy. *Shelton*, 318 Mich App at 652. Here, there is no question that plaintiff is a resident relative under his mother's no-fault policy.

With that said, several months after the trial court denied summary disposition, this Court issued its decision in *Meemic*, which involved a claim for PIP benefits. The facts in that case are materially indistinguishable from the instant case with respect to plaintiff's claim for PIP benefits, with one important caveat.

In *Meemic*, a 19-year-old man received benefits under his parents' no-fault-insurance policy after he sustained injuries in an auto accident. *Meemic*, 324 Mich App at 471-472. The defendant insurer concluded that the injured man's service providers (his parents) submitted false claims for replacement services, terminated payment of no-fault benefits to the injured man, and cancelled the insurance policy. *Id.* at 472, 479. In the resulting lawsuit, the trial court relied on this Court's decision in *Bahri* and granted summary disposition in the defendant's favor, terminating the injured man's benefits based on the service providers' fraud. *Id.* at 472-473. On appeal, this Court concluded that there was no genuine issue of material fact that the service providers committed fraud with regard to the submission of claims for replacement services. *Id.* at 473-474. This Court nonetheless concluded that, with respect to the injured man's claim, the fraud-exclusion clause in the insurance contract was invalid. The *Meemic* Court noted that contractual provisions in an insurance policy that conflict with statutes are invalid. *Id.* at 478,

citing *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261; 819 NW2d 68 (2012). This Court then concluded:

> Because MCL 500.3114(1) mandates coverage for a resident relative domiciled with a policyholder, the fraud-exclusion provision, as applied to [the injured person's] claim, is invalid because it conflicts with [the injured person's] statutory right to receive benefits under MCL 500.3114(1). [*Id*. at 478-479.]

The *Meemic* Court reached this conclusion even though it acknowledged that the injured man in that case was a resident relative of the named insureds, and therefore qualified as an "insured person" under the insurance policy. *Id*. at 478 n 2. But this Court reasoned that, if he were not an "insured person," then he would have been statutorily entitled to benefits under his parents' no-fault insurance policy by virtue of his status as a resident relative. *Id*. at 478. This Court concluded that an insurer should not be allowed, simply "by duplicating statutory benefits in a no-fault policy," to "avoid paying no-fault benefits to an injured claimant if *someone other than the claimant* commits fraud and triggers a fraud-exclusion clause that allows the policy to be voided." *Id*. (emphasis added).

Importantly, the *Meemic* Court recognized that it was not the injured man, but his parents-as-service-providers, who committed fraud regarding the submission of claims for replacement services. *Id*. at 473-474. Various statements made by the *Meemic* majority lend support to the notion that a plaintiff's involvement in the alleged fraud is a key factor when evaluating the plaintiff's entitlement to PIP benefits. See, e.g., *id*. at 477 n 1 ("However, in this case, equity appears to lean in favor of protecting the innocent third party who was statutorily mandated to seek coverage under a validly procured policy and was, unlike the claimant in *Bahri*, wholly uninvolved in the fraud committed *after* the policy was procured."); *id*. at 483 (emphasis added) ("Instead, Louise and Richard were merely attendant-care providers for Justin when *they* committed fraud."); *id*. at 484 n 5 ("This is not to say that a defrauded insurer does not have a remedy against the person who committed the fraud.") Similarly, this Court has elsewhere recognized that an insurer need not pay a particular claim if the plaintiff was involved in fraud with respect to that claim. See, e.g., *Shelton*, 318 Mich App at 655 ("As always, if an insurer concludes that a claim is fraudulent, it may deny the claim. Should the claimant then file suit, the burden is on the claimant to prove that he or she is entitled to his or her claimed benefits, a burden that is highly unlikely to be met if the fact-finder concludes that the claim is fraudulent.").

As in *Meemic*, plaintiff did not have his own no-fault policy. As in *Meemic*, plaintiff sought benefits as a resident relative covered under his parent's no-fault policy. And, as in *Meemic*, defendant claims that fraud triggered the no-fault policy's anti-fraud exclusion, prohibiting plaintiff from receiving any benefits under the policy. With respect to these aspects, this case is indistinguishable from *Meemic*, at least as to PIP benefits.

## C. DEFENDANT'S FRAUD CLAIMS

This case differs from *Meemic*, however, in one material respect. In *Meemic*, there was no question that the injured man did not commit fraud with respect to his claims for benefits, where here defendant maintains that plaintiff committed multiple fraudulent acts. Because the

trial court held that the anti-fraud clause of the no-fault policy did not apply to plaintiff, the trial court neither considered nor decided whether a genuine issue of material fact existed regarding plaintiff's participation in the alleged fraud. Generally, an issue is not properly preserved if it is not raised before, addressed, *and decided* by the trial court. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Although this Court need not address an unpreserved issue, it "may overlook preservation requirements if the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

With regard to defendant's claim that plaintiff committed fraud by listing his former employer on his application for benefits, we conclude that there is no genuine issue of material fact. On this claim, we elect to overlook the applicable preservation requirements because all the facts necessary for its resolution have been presented. See *id*. Plaintiff initially listed his prior employer on the application form, but then crossed out the entry, clearly indicating that he did not want defendant to rely on that information in determining benefits. Plaintiff did not list any other information on the form to suggest that he was then employed or had suffered wage loss because of the accident. There is no question of material fact that plaintiff's action of listing a prior employer, and then crossing it out, was not (1) a material misrepresentation, (2) that was false, (3) that plaintiff knew was false when he completed the form, and (4) that plaintiff made the material misrepresentation with the intention that defendant would pay him wage-loss benefits related to his former employment. See *Bahri*, 308 Mich App at 424-425. With regard to defendant's remaining fraud claims, however, given the extremely detailed nature of the conflicting proofs regarding those claims, and given that the trial court neither considered nor decided whether a genuine issue of material fact existed regarding plaintiff's participation in the alleged fraud, we decline to address these unpreserved issues.

It must be emphasized that *Meemic* applies only to plaintiff's PIP claims, not to his UM and UIM claims. Because UM and UIM coverages are not statutorily mandated and have no statutory counterpart, these coverages are controlled by the language of the no-fault policy. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 532; 620 NW2d 840 (2001). Therefore, as plaintiff's purported fraud relates to his UM and UIM claims, the broad language of the anti-fraud clause in the policy controls the breadth of the fraud defense. See *Shelton*, 318 Mich App at 655 n 7 (noting that the applicable contract language differs in each case). If plaintiff committed any fraud, then the anti-fraud clause of the policy would bar plaintiff's UM and UIM claims in their entirety. Moreover, even with respect to plaintiff's PIP claims, this Court has made clear on several occasions that an insurer need not pay a fraudulent claim. See *Meemic*, 324 Mich App at 484 n 5; *Shelton*, 318 Mich App at 655. The "burden is on the claimant to prove that he or she is entitled to his or her claimed benefits, a burden that is highly unlikely to be met if the fact-finder concludes that the claim is fraudulent." *Shelton*, 318 Mich App at 655.

## D. PLAINTIFF'S UM AND UIM CLAIMS

Separate from any fraud-based arguments, defendant also argues that it is entitled to summary disposition of plaintiff's claims for UM and UIM benefits because plaintiff did not provide defendant acceptable proof that Jackson was not covered by an insurance policy at the

time of the accident. Alternatively, defendant argues that it did not receive a final declaratory judgment against Jackson or the owner of the vehicle she was driving, establishing that both the owner and operator of the vehicle were not covered by a liability policy at the time of the accident. Because the trial court addressed neither of these arguments when it denied defendant's motion for summary disposition, these issues are also unpreserved. See *Gen Motors*, 290 Mich App at 386. Yet, we address these issues because consideration is necessary for a proper determination of the case. See *Smith*, 269 Mich App at 427.

In attempting to avoid its contractual obligation to pay plaintiff UM and UIM benefits, defendant relies on three different sections of the no-fault policy. First, defendant relies on a section of the policy regarding the limit of liability for UM coverage. That contractual section provides:

C.      Limit of Liability

We will pay for compensatory damages up to the Limit of Liability stated in the Declarations as follows:

1.      The limit of liability shown in the Declarations "per person" for Uninsured Motorist is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this "per person" limit, the limit of liability shown in the Declarations "per occurrence" for Uninsured Motorist is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

2.      This is the most we will pay regardless of the number of:

        a.      autos or premiums shown in the Declarations;

        b.      claims made or suits brought;

        c.      persons injured;

        d.      autos involved in the accident; or

        e.      insureds.

3.      The amount payable for this Uninsured Motorist Coverage will be reduced by any amounts paid or payable for the same bodily injury:

*   *   *

        c.      by or on behalf of any person or organization who may be legally liable for the bodily injury to the extent of any insurance applicable, and any assets not exempt from legal process.

4.  We will not make duplicate payment under this coverage for the same element of loss a person is entitled to receive under any Underinsured Motorist Coverage provided by this policy.

Defendant argues that this paragraph bars plaintiff's claim for UM benefits because there may be another person or organization who may be legally liable for the bodily injury, i.e., the at-fault driver or her insurance carrier. This contract clause does not state, however, that plaintiff's UM claim against defendant is barred if such a person or organization exists. This contract clause simply provides that plaintiff's recovery against defendant must be reduced by any amounts paid or payable by another person or organization, such as an insurer. Because defendant has provided no evidence of any amounts paid or payable from another person or insurer related to this accident, defendant is not entitled to summary disposition of plaintiff's claims for UM benefits under this contractual language.

Second, defendant relies on another section of the policy regarding the duties of a person seeking UM coverage, which states:

G.  Additional Duties for Uninsured Motorist Coverage

\* \* \*

2.  The injured person making a claim must:

a.  provide proof(s) affirming that the auto and operator were not covered by a liability policy or bond at the time of the accident. Alternatively, the person may provide a final declaratory judgment against the owner and operator of the uninsured automobile establishing that the auto and operator were not covered by a liability policy or bond at the time of the accident.

Defendant argues that this paragraph bars plaintiff's claim for UM benefits because plaintiff did not provide proof that both the vehicle and its operator were not covered by insurance at the time of the accident.

Plaintiff argued in the trial court that he identified the operator of the other vehicle involved in the accident, i.e., Jackson, and that he obtained a default judgment against her. Plaintiff also pointed out that there was no evidence that Jackson was insured, and that defendant was not even alleging that she was insured. Plaintiff is correct that the entry of the default judgment against Jackson was equivalent to an admission of every well-pleaded matter in the complaint. See *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). Because plaintiff's complaint in this case alleged that Jackson was uninsured at the time of the accident, and because the trial court entered a default judgment against Jackson, we conclude that the default judgment has settled the matter and has determined that Jackson was uninsured. Furthermore, defendant was a party to the lawsuit in which the default was obtained and had every opportunity to object to the entry of the default if it had some proof that Jackson was actually insured.

To the extent that defendant may be arguing that plaintiff failed to sue the owner of the vehicle, such an argument is unclear from defendant's brief on appeal. Yet, defendant points to no evidence in the record that the vehicle was owned by someone other than the at-fault driver. Even though the trial court did not address this issue, on these facts, we conclude that the trial court did not err when it denied defendant's motion for summary disposition regarding plaintiff's claim for UM benefits under this contractual language.

Third, defendant relies on a completely separate endorsement regarding UIM benefits. The Underinsured Motorist Endorsement to the policy states:

> C.     Changes to E. Additional Conditions:
>
> Item 7. is added as follows:
>
> 7.     Action Against Us and Exhaustion of Other Payments
>
> *   *   *
>
> c.     The following shall not occur until after the limits of liability under all other liability bonds or policies that apply at the time of the accident have been exhausted by payment of judgments or settlements:
>
> (1) No action by way of suit shall be brought against us;
>
> (2) No arbitration shall be agreed to;
>
> (3) Nor shall we be otherwise obligated to make any payment pursuant to Part IV and this endorsement.

Defendant argues that this contractual language bars plaintiff's claim for UIM coverage because plaintiff did not exhaust the limits of liability under other applicable insurance policies before filing suit against defendant. Yet, because defendant points to no record evidence that any other liability policies apply to plaintiff's accident, defendant is not entitled to summary disposition of plaintiff's claim for UIM benefits under this contractual language.

Affirmed and remanded for further proceedings consistent with this opinion. Plaintiff, having prevailed in full, is entitled to tax costs under MCR 7.219(F). We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle